# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 14-235V
Filed: January 18, 2018
Not for Publication

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| LISA BROWN and CHRISTOPHER BROWN, as the Parents and Natural Guardians of Z.B., an Infant,            Petitioners, <br><br> v. <br><br> SECRETARY OF HEALTH AND HUMAN SERVICES, <br><br>            Respondent. | Attorneys' fees and costs decision; reasonable attorneys' fees and costs |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Mark T. Sadaka, Englewood, NJ, for petitioners.
Voris E. Johnson, Washington, DC, for respondent.

**MILLMAN, Special Master**

### DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

On March 27, 2014, petitioners filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-10–34 (2012) alleging that their daughter, Z.B., suffered opsoclonus myoclonus syndrome ("OMS") due to her May 3, 2011 receipt of pneumococcal conjugate vaccine. Pet. Preamble. On June 28, 2017, the undersigned issued a decision awarding damages to petitioners based on the parties' stipulation filed on the same day.

On December 27, 2017, petitioners filed an application for attorneys' fees and costs. In

---

[1] Because this unpublished decision contains a reasoned explanation for the special master's action in this case, the special master intends to post this unpublished decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy. When such a decision is filed, petitioners have 14 days to identify and move to redact such information prior to the document's disclosure. If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall redact such material from public access.

their application, petitioners request a total of $72,584.69, comprised of $44,835.65 for attorneys' fees and $27,749.04 for attorneys' costs.

On January 8, 2018, respondent filed a response to petitioners' motion explaining he is satisfied that this case meets the statutory requirements for an award of attorneys' fees and costs under 42 U.S.C. § 300aa-15(e)(1)(A)-(B). Resp. at 2. Respondent "respectfully recommends that the [undersigned] exercise her discretion and determine a reasonable award for attorneys' fees and costs." Id. at 3.

## DISCUSSION

I. **Legal Standard for Attorneys' Fees and Costs**

   A. **In General**

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." 42 U.S.C. § 300aa-15(e)(1). The special master has "wide discretion in determining the reasonableness" of attorneys' fees and costs. Perreira v. Sec'y of HHS, 27 Fed. Cl. 29, 34 (1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994); see also Saxton ex rel. Saxton v. Sec'y of HHS, 3 F.3d 1517, 1519 (Fed. Cir. 1993) ("Vaccine program special masters are also entitled to use their prior experience in reviewing fee applications.").

II. **Reasonableness of Requested Attorneys' Fees and Costs**

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Avera, 515 F.3d 1343, 1348. This rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." Rodriguez v. Sec'y of HHS, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing Avera, 515 F. 3d at 1349). For cases in which forum rates apply, McCulloch provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorneys' experience. See McCulloch v.Sec'y of HHS, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Once the applicable hourly rate is determined, it is applied to the "number of hours reasonably expended on the litigation." Avera, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." Saxton v. Sec'y of HHS, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). Counsel must submit fee requests that include contemporaneous and specific billing entries indicating the task performed, the number of hours expended on the task, and who performed the task. See Savin v. Sec'y of HHS, 85 Fed. Cl. 313, 316–18 (Fed. Cl. 2008). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." Id. Furthermore, the special master may reduce fees *sua sponte*, apart from objections raised by respondent and without providing petitioners notice and opportunity to respond. See Sabella v. Sec'y of HHS, 86 Fed. Cl. 201, 208–09 (Fed. Cl. 2009). A special master need not engage in a line-by-line analysis of

petitioner's fee application when reducing fees.   Broekelschen v. Sec'y of HHS, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011).

### 1. Reasonable Hourly Rates

Petitioners request compensation for Mr. Sadaka at a rate of $337.05 per hour for time billed in 2012 and 2013; $350 per hour for 2014 and 2015; $362.95 per hour for 2016; and $376.38 per hour for 2017.   Doc 68 at 2.   These rates have been evaluated and awarded to Mr. Sadaka in other Vaccine Act cases.   See Siciliano v. Sec'y of HHS, 2017 WL 1174449 (Fed. Cl. Spec. Mstr. Feb. 21, 2017).   The undersigned finds the requested rates reasonable.

Petitioners also request compensation for Anna Sweeney and Andrew Pinon, associate attorneys in Mr. Sadaka's firm.   The rates requested for Ms. Sweeney are $192.60 per hour for time billed in 2013; $200 per hour for 2014; $207.40 per hour for 2015; $215.07 per hour in 2016; and $223.03 per hour for 2017.   Id.   The requested rates for Mr. Pinon are $200 per hour for 2014; $207.40 per hour for 2015; $215.07 per hour for 2016; and $223.03 per hour for 2017.   Id.   Ms. Sweeney and Mr. Pinon have been awarded these rates previously.   See Siciliano, 2017 WL 1174449, at *2.   The undersigned finds the requested rates reasonable.

Finally, petitioners request compensation for numerous non-attorney members of Mr. Sadaka's firm, including six paralegals, one law clerk, and one person[2] with an unstated job title or credentials.   Doc 68 at 2.   The undersigned finds the rates requested for the six paralegals are reasonable.   Petitioners seek a $155.93 hourly rate for law clerk's work in 2017.   The undersigned concludes that the hourly rate for a law clerk should be reduced from $155.93 to $145.   Finally, for the person with an unstated job title or credentials, the undersigned reduces the requested hourly rate of $145.17 to $125, which is the base rate for paralegals.   **This results in a deduction of $22.36.**

### 2. Reduction of Billable Hours

#### a. Clerical Tasks

It is firmly rooted that billing for clerical and other secretarial work is not permitted in the Vaccine Program.   Rochester v. United States, 18 Cl.Ct. 379, 387 (1989) (denied an award of fees for time billed by a secretary and found that "[these] services … should be considered as normal overhead office costs included within the attorneys' fees rates"); Mostovoy v. Sec'y of HHS, 2016 WL 720969, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2016).

Petitioners' counsel's billing records contain multiple entries that are best characterized as administrative tasks.   Throughout the billing invoices, paralegals billed 0.1 to 0.2 hours for tasks such as "receive/review notice; update case file," "receive/review order re: status conference;

---

[2] Michele Curry is included neither on the requested rates table provided in petitioners' application for attorneys' fees and costs nor in Mr. Sadaka's certification in support for attorneys' fees and costs.   Doc 68 at 2, 4-8.

update schedule; update case file," and "receive/review order granting [a] motion for [an] extension; update schedule; update case file" after reviewing a one-page court order or scheduling a conference. Doc 68-1 (entries dated 3/28/2014; 4/1/2014; 4/3/2014; 4/16/2014; 5/20/2014; 6/20/2014; 8/6/2014; 11/4/2014; 11/24/2014; 11/25/2014; 1/6/2015; 3/9/2015; 5/13/2015; 6/16/2015; 8/5/2015; 9/3/2015; 11/3/2015; 1/14/2016; 2/24/2016; 3/18/2016; 5/17/2016; 6/1/2016; 7/19/2016; 7/26/2016; 8/2/2016; 9/29/2016; 11/14/2016; 12/15/2016; 3/2/2017; 5/4/2017; 5/8/2017; 6/20/2017; 6/22/2017; 6/28/2017; 7/13/2017; 7/20/2017; 7/24/2017). Additionally, a paralegal billed a combined one hour for making a mediation schedule. Id. (entries dated 2/21/2017; 3/2/2017; 3/15/2017; 4/13/2017; 4/19/2017; 4/24/2017; 4/26/2017; 5/4/2017). Beyond the fact that this is clerical work billed at paralegals' rates, the undersigned cannot imagine how it takes six to twelve minutes to enter a date, or even three dates, on one's calendar. These types of entries are clerical in nature and do not constitute billable time. Accordingly such entries will be deducted from the fee award, amounting to a **further reduction of $1242.13.**

### b. Duplicative Billing Entries

The undersigned has previously found it reasonable to reduce the fees paid to petitioners due to duplicative billing and billing for intra-office communication. Soto v. Sec'y of HHS, No. 09-897V, 2011 WL 2269423, at *6 (Fed. Cl. Spec. Mstr. June 7, 2011); Carcamo v. Sec'y of HHS, No. 97-483V, 2011 WL 2413345, at *7 (Fed. Cl. Spec. Mstr. May 20, 2011). Special masters have previously noted the inefficiency that results when cases are staffed by multiple individuals and have reduced fees accordingly. Sabella v. Sec'y of HHS, 86 Fed. Cl. 201, 209 (2009).

After reviewing the billing records, the undersigned finds that counsel included entries that are duplicative due to both attorneys and paralegals billing for review of the same notices or documents and communicating with each other regarding the same matters. For example, both Mr. Sadaka and his paralegal billed for: reviewing notices of designation and assignment on March 28, 2014; reviewing the notice of appearance on April 1, 2014 and July 19, 2016; reviewing the initial status conference order on April 3, 2014; reviewing a status conference order or a scheduling order on April 16, 2014, May 20, 2014, March 9, 2015[3], August 5, 2015, November 3, 2015, January 14, 2016, February 24, 2016[4], March 18, 2016, March 18, 2016, May 17, 2016, July 26, 2016, August 2, 2016, September 29, 2016, November 14, 2016, December 15, 2016, March 2, 2017, and May 1, 2017; reviewing an order granting a motion for an extension of time on August 6, 2014, November 4, 2014, January 6, 2015, March 9, 2015, May 13, 2015, September 3, 2015, and June 1, 2016; reviewing the 240-day order and revising the notice of intent to remain on November 24 and 25, 2014; in-house communication regarding next steps or a status report on January 14, 2016, March 18, 2016, April 18, 2016, and December 15, 2016; receiving and reviewing respondent's correspondence regarding demand negotiation on September 29, 2016; reviewing a status report on May 8, 2017, June 20, 2017, June 22, 2017, and July 20, 2017; reviewing the parties' stipulation and the undersigned's decision awarding damages on June 28, 2017; reviewing the judgment entered on July 13, 2017; and reviewing a decision that went public

---

[3] A status conference was held on March 10, 2015 instead of March 9, 2015.
[4] No status conference was held by the undersigned in this case on February 24, 2016 or on any date in February 2016.

on July 24, 2017.   Doc 68-1 at 5-32.

Moreover, both Ms. Sweeney and a paralegal billed for: in-house communication regarding next steps on March 9, 2015 and June 16, 2015; and reviewing a status conference order on June 16, 2015.   Id. at 14, 15.   In addition, two attorneys and one paralegal billed a combined 5.6 hours for preparing one petitioner's affidavit.   Id. at 7-11.

### c. Excessive and Block Billing

Special masters have previously reduced the fees paid to petitioners due to excessive and duplicative billing.   See Ericzon v. Sec'y of HHS, No. 10-103V, 2016 WL 447770 (Fed. Cl. Spec. Mstr. Jan. 15, 2016) (reduced overall fee award by 10 percent due to excessive and duplicative billing); Raymo v. Sec'y of HHS, No. 11-654V, 2016 WL 7212323 (Fed. Cl. Spec. Mstr. Nov. 2, 2016) (reduced overall fee award by 20 percent), *mot. for rev. denied*, 129 Fed. Cl. 691 (2016). Special masters have previously noted the inefficiency that results when cases are staffed by multiple individuals and have reduced fees accordingly.   See Sabella, 86 Fed. Cl. at 209.

In addition to a combined 3.8 hours of counsel time billed for reviewing medical records, petitioners' counsel billed nearly 26.7 hours[5] of paralegal time for work related to requesting, receiving, and reviewing medical records.   See Doc 68-1 at 2-9, 19-21.   The undersigned finds this an excessive amount of time for the approximately 1792 pages of records filed in this case. The undersigned recognizes 10 hours of paralegal time for requesting and reviewing medical records.   If receiving the records would take any time at all, it would be administrative in nature and does not constitute billable time.

Moreover, the billing records contain numerous entries which constitute block billing, where counsel has billed for multiple tasks in a single entry.   This type of "block billing" is not appropriate in vaccine cases.   Barry v. Sec'y of HHS, No. 12-39V, 2016 WL 6835542, at *4 (Fed. Cl. Spec. Mstr. Oct. 25, 2016).   An application for fees and costs must sufficiently detail and explain the time billed so that a special master may determine whether the amount requested is reasonable.   Rodriguez v. Sec'y of HHS, No. 06-559V, 2009 WL 2568468, at *8 (Fed. Cl. Spec. Mstr. Oct. 25, 2016).   Because it is counsel's burden to document the fees claimed, the undersigned will not compensate the time billed for the entire billing entry.   Id.

In many instances, counsel and paralegals billed amounts of time without sufficient detail as to how long each task was performed and made it impossible for the undersigned to determine the reasonableness of those activities.   For example, on October 2, 2012, Mr. Sadaka billed 1.4

---

[5] Based on the undersigned's review and calculations, Keri L. Congiusti billed 19.6 hours from 5/30/2012 to 7/14/2014 related to 1746 pages of medical records (e.g., "Review of client provided medical records; verify medical providers; update file," "Receipt/review of medical records; update file," "Communication with medical center re: MR Request; draft/revise notes to file.").   In addition, Ms. Sweeney billed 3.3 hours and Mr. Sadaka billed 0.5 hours to review those records.   From 3/28/2016 to 4/13/2016, Bria Wilson billed 6.1 hours and Keri L. Congiusti billed one hour related to 46 pages of additional medical records.

hours for reviewing the file, drafting and revising a memorandum, and performing basic legal research.  Doc 68-1 at 2.  On January 3, 2013, Mr. Sadaka billed 1.8 hours for reviewing the file, performing medical and case research, and drafting and revising a memorandum.  Id.  On March 25, 2013, Keri L. Congiusti billed 1.1 hours for reviewing the file and medical records, in-house communication with counsel, and communicating with petitioners.  Id. at 3.  On November 3, 2015, January 14, 2016, March 18, 2016, and May 16, 2016, Mr. Sadaka billed 1.6, 1.2, 2.1, and 1.1 hours, respectively, for preparing for a status conference, reviewing the file, attending the status conference, drafting a memorandum, and in-house communication with a paralegal.  Id. at 17-19, 21.  On June 10, 2016, Mr. Sadaka billed 1.2 hours for reviewing the life care plan, reviewing the file, and drafting correspondence to respondent regarding the life care plan.  Id. at 22.

Due to the volume of duplicative, excessive, and block billing entries, the undersigned further reduces petitioners' requested fees by ten percent.  See Willett v. Sec'y of HHS, No. 15-252V, 2017 WL 3298983, at *4 (Fed. Cl. Spec. Mstr. June 2, 2017) (reducing Mr. Sadaka's fee award by 20 percent due to excessive, duplicative, and vague billing entries); see also Wasson v. Sec'y of HHS, 24 Cl. Ct. 482, 484 (Fed. Cl. 1991) (a line-by-line evaluation is not required in determining a reasonable number of hours expended), *aff'd in relevant part*, 988 F.2d 131 (Fed. Cir. 1993).  This adjustment results in a **further deduction of $4,357.12**.

Thus, the total amount of attorneys' fees for Mark T. Sadaka, LLC is reduced by $5,621.6 and $39,214.05 is awarded.  The undersigned finds the attorneys' costs reasonable.  Therefore, the total amount paid for attorneys' fees and costs incurred by Mark T. Sadaka, LLC is **$66,963.09.**

## CONCLUSION

Based on her experience and review of the billing records submitted by petitioners, the undersigned finds the majority of petitioners' attorneys' fees and costs request reasonable.  **Accordingly, the court awards $66,963.09**, representing attorneys' fees and costs.  The award shall be in the form of a check made payable jointly to petitioners and Mark T. Sadaka, LLC in the amount of **$66,963.09**.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[6]

**IT IS SO ORDERED.**

---

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.

Dated: January 18, 2018              /s/ Laura D. Millman
                                                                            Laura D. Millman
                                                                               Special Master